EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL GONZÁLEZ RODRÍGUEZ, acusado y apelante.

Núms. 10319 y 10320.—*Sometidos:* Febrero 10, 1944.   *Resueltos:* Marzo 21, 1944.

*José M. Dávila Monsanto,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón-Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué acusado de un delito de asesinato en primer grado cometido en Aibonito el 28 de junio dé 1936 en la persona de Juan Francisco Centeno.   También lo fué de homicidio voluntario porque en los mismos sitio y fecha, y

mientras hacía los disparos que privaron de la vida a Juan Francisco Centeno, uno de los referidos disparos hirió a Isidro Ortiz, quien a consecuencia de la herida recibida falleció días después.

El juicio en el caso de asesinato comenzó el 24 de noviembre de 1942, terminando dos días después con el veredicto que declaró al acusado culpable de homicidio voluntario, siendo sentenciado el 30 de diciembre de 1942 a ocho años de presidio con trabajos forzados. Ese mismo día el acusado, asistido de sus abogados, pidió a la corte que el caso de homicidio por la muerte de Isidro Ortiz, que había sido señalado para el 19 de enero siguiente, fuese llamado a juicio inmediatamente a fin de renunciar al juicio por jurado que había solicitado y someterlo por tribunal de derecho por la evidencia presentada en el caso en que se le condenó a ocho años de presidio. La corte accedió a lo solicitado, e inmediatamente lo declaró culpable y, a petición del propio acusado, dictó sentencia en el acto condenándolo a cinco años de presidio con trabajos forzados, consignándose que la sentencia de cinco años debería extinguirse concurrentemente con la de ocho años.

No debemos seguir adelante sin consignar nuestra más enérgica reprobación por la injustificada tardanza que ha habido en la prosecución de estos casos. Es inconcebible que un hombre que ilegalmente privó de la vida a dos semejantes el 28 de junio de 1936, no haya podido ser enjuiciado hasta el 24 de noviembre de 1942, y que habiendo sido sentenciado por la corte de distrito el 30 de diciembre de 1942, los autos en apelación no fuesen elevados a este Tribunal hasta el 20 de noviembre de 1943. Es una vergüenza para la administración de la justicia en Puerto Rico, que hasta este momento el acusado permanezca aún sin recibir su merecido castigo, gozando de su libertad bajo fianza como si ningún delito hubiese cometido. En justicia al juez sentenciador, debemos consignar que él no es del todo responsable de esa dilación,

ya que fué nombrado juez de la corte inferior el 28 de junio de 1941, y no sabemos cuál podría ser el volumen de trabajo acumulado en dicho tribunal. Pero de todos modos, no encontramos justificación para que se hayan necesitado once meses para la elevación de los autos a este Tribunal, especialmente después de la injustificada dilación de que fueron objeto estos casos.

Pasemos a discutir los errores señalados.

■ Se queja el apelante de habérsele privado del derecho que tiene todo acusado de *felony* a estar presente durante la sustanciación del juicio. Lo sucedido, conforme aparece del récord, fué que el fiscal trató de impugnar la veracidad del acusado mientras declaraba como testigo. Sostenía el fiscal que el acusado en el examen directo había hecho ciertas manifestaciones contrarias a las que hacía en el examen de repreguntas. Para determinar si el acusado en realidad había hecho antes las manifestaciones que decía el fiscal, era necesario leer las notas taquigráficas de su declaración, y a fin de no refrescar la memoria del acusado con respecto a lo que antes había declarado, solicitó el fiscal que el acusado se retirase del salón mientras el taquígrafo leía las notas taquigráficas de su declaración. Lo ordenó la corte, y el acusado fué retirado del salón por espacio de doce minutos mientras el taquígrafo leía su declaración. Al terminar la lectura fué conducido el acusado a la sala de la corte, pero como resultado de la lectura el juez no permitió la pregunta que se proponía hacer el fiscal, terminando así el incidente.

El artículo dos de la Ley Orgánica garantiza a todo acusado en un proceso criminal el derecho a carearse con los testigos de cargo, y el 179 del Código de Enjuiciamiento Criminal prescribe que si el proceso fuere por felony, el juicio no podrá celebrarse sin hallarse presente el acusado.

En el caso de *Snyder* v. *Massachusetts*, 291 U.S. 97, 122, el Juez Cardozo hablando por la corte, dijo:

"La ley, como hemos visto, es celosa en preservar al acusado cuanta forma de procedimiento sea esencial para darle una oportu-

nidad de defensa. Aquellos privilegios tan fundamentales que sean inherentes en todo concepto de un juicio justo, aceptables por hombres razonables, se mantendrán inviolados e inviolables, no importa cuán fuerte sea la presión de la prueba incriminatoria. Pero la justicia, si bien se debe al acusado, también le es debida al acusador. El concepto de lo justo no debe estirarse hasta convertirlo en un filamento. Debe mantenerse el justo medio.''

No cabe duda del derecho que tiene todo acusado de felony a estar presente durante la sustanciación del juicio. Sin embargo, ese derecho está relacionado con el propósito de garantizarle una completa oportunidad de defensa. Si en el presente caso, durante la ausencia del acusado se hubiese recibido evidencia o realizado cualquier acto que en forma alguna pudiese haber afectado esa oportunidad, sin duda hubiésemos tenido que decretar que había existido un *mistrial,* revocar la sentencia y conceder un nuevo juicio. Pero lo que en ausencia del acusado tuvo lugar en el presente caso fué leer la declaración que momentos antes el jurado había oído de labios del propio acusado, con lo cual no se afectaba su oportunidad de defensa.

█ El segundo de los errores señalados no merece seria consideración. Se alega por el apelante que la corte no permitió a sus abogados hacer alusión al récord del juicio y tomarlo como base para sus objeciones y mociones en el curso del mismo. Pero la verdad de lo sucedido fué que uno de los abogados del acusado, el señor Juan Valldejuli, frecuentemente hacía comentarios impertinentes durante el período de la prueba y a cada momento repetía lo que según él habían dicho o dejado de decir los testigos de descargo, apuntándoles así las contestaciones que debían dar a las repreguntas que les hacía el fiscal. Lo que hizo la corte fué revestirse de una paciencia sin límites llamando constantemente la atención de dicho abogado a su conducta impropia, tratando de evitar así un fracaso de la justicia.

█ Por último alega el apelante que la prueba es insuficiente para sostener la convicción en ambos casos. La evi-

dencia fué contradictoria. La del fiscal tendió a demostrar la comisión de un delito de asesinato, la de la defensa un caso de defensa propia. Pero el jurado en el caso en que se imputó el delito de asesinato, y el juez en el de homicidio voluntario, dirimieron el conflicto en contra del acusado, y uno y otro lo declararon convicto de homicidio voluntario. La prueba del fiscal tendió a demostrar que la noche antes de los sucesos el acusado, mientras iba acompañado de un amigo por una calle de Aibonito dijo, según declaró un policía, que Juan Francisco Centeno le había dado una bofetada y que él tenía que desquitarse de lo que le había hecho aquel negro, refiriéndose a Centeno. A la mañana siguiente, antes de que se levantase Centeno, una hija de éste vió al acusado en la calle, apostado frente a la casa de aquél. Posteriormente, y como a eso de las ocho de la mañana, Centeno se hallaba de pie junto a su carro hablando con otros chóferes en la calle principal de Aibonito. Llegó allí el acusado y, sin mediar palabras, disparó su revólver contra Centeno. Huyó éste, pero el acusado lo persiguió, haciéndole tres disparos, falleciendo como consecuencia de éstos Juan Francisco Centeno e Isidro Ortiz, quien se hallaba en el grupo en compañía del interfecto. Inmediatamente después, el acusado se dirigió al cuartel de la policía, donde manifestó al jefe de distrito, ''Vengo a entregarme, que acabo de matar a ese negro, Centeno.'' Al preguntarle el jefe por qué lo había matado, contestó, ''Yo estoy muy agitado y no puedo hablar ahora.''

A nuestro juicio, la prueba incriminatoria que tuvieron ante sí el jurado y el juez sentenciador es suficiente para sostener la convicción en uno y otro caso.

*No habiéndose cometido los errores señalados por el acusado, procede la confirmación de las sentencias.*